REVISED, June 5, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10941
_____

TALFORD H ROYAL,

                           Petitioner-Appellant,

            v.

JOHN TOMBONE, Warden, Federal Correctional Institution
Seagoville, Texas,

                           Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

June 3, 1998

Before KING, SMITH, and STEWART, Circuit Judges.

PER CURIAM:

    Petitioner-appellant Talford H. Royal appeals the district
court's dismissal of his 28 U.S.C. § 2241 habeas corpus petition
challenging the Bureau of Prisons' determination that he was not
eligible for a sentence reduction following his successful
completion of a drug-abuse treatment program while in custody.
We affirm.

                    I.  FACTUAL & PROCEDURAL BACKGROUND

    On April 18, 1994, petitioner-appellant Talford H. Royal
robbed a Bank One branch in Dallas, Texas.  Royal subsequently
pled guilty to bank robbery in violation of 18 U.S.C. § 2113(a),

and the district court sentenced him to sixty-three months of imprisonment.

On September 6, 1994, Royal enrolled in a residential drug-abuse treatment program at the federal correctional institute in El Reno, Oklahoma (FCI El Reno). He successfully completed the program, and he claims that the Bureau of Prisons (BOP) granted him a one-year sentence reduction pursuant to 18 U.S.C. § 3621(e). Thereafter, the BOP issued Change Notice CN-01 to Program Statement 5162.02, which classified bank robbery as a "crime of violence," thereby making Royal ineligible for a sentence reduction under § 3621(e). Royal contends that the BOP then revoked the sentence reduction that it had already granted to him.

Royal filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241, contending that the revocation of his one-year sentence reduction based on the newly-issued Change Notice CN-01 amounted to a violation of his constitutional rights under the Due Process and Ex Post Facto Clauses. In addition, Royal claimed that Program Statement 5162.02, as modified by Change Notice CN-01, was invalid because it was not promulgated in accordance with the Administrative Procedure Act (APA), 5 U.S.C. § 552, and, alternatively, that even if it was valid, it should not have been applied to him retroactively. The government answered and conceded that Royal had exhausted his administrative remedies. Both parties thereafter agreed to a proceeding before a magistrate judge.

The magistrate judge noted that it was unclear from the parties' evidence whether the BOP had ever granted Royal a one-year sentence reduction.[1] Nevertheless, he concluded that Royal had failed to show the deprivation of a liberty interest even if it was assumed that he was granted a one-year reduction because the granting of sentence reductions to eligible inmates pursuant to § 3621(e) is left, by the terms of the statute, to the discretion of the BOP. The magistrate judge also concluded that Royal had failed to show that the BOP's action amounted to a breach of contract or an ex post facto violation. Accordingly, the magistrate judge denied Royal's § 2241 petition. Royal timely filed a notice of appeal.

## II. STANDARD OF REVIEW

In the context of a § 2241 petition, this court "reviews the district court's determinations of law <u>de novo</u> and its findings of facts for clear error." <u>Venegas v. Henman</u>, 126 F.3d 760, 761 (5th Cir. 1997).

## III. DISCUSSION

Royal contends that Change Notice CN-01 is invalid because it was not promulgated pursuant to the rules of the APA.[2] He

---

[1] Royal submitted to the court a computer print-out dated January 25, 1996 that stated, "The inmate is projected for release: 11-13-1997 VIA 3621E CMPL." The government submitted a similar print-out dated February 12, 1997 that indicated that Royal's projected release date was November 13, 1998. The magistrate judge noted that there was "at least some indication that the [BOP] considered a one-year sentence reduction" for Royal's participation in the treatment program.

[2] Although the magistrate judge did not address this issue in his Memorandum Opinion, Royal included it in his

3

further argues that even if it is valid, the BOP's grant and subsequent revocation of a one-year sentence reduction violated his constitutional rights as guaranteed by the Ex Post Facto and Due Process Clauses,[3] that it constituted a breach of contract, and that Program Statement 5162.02, as modified by Change Notice CN-01,[4] should not be applied to him retroactively. The government responds that Royal's rights were not violated because at all times the decision of whether or not to grant an early release was left to the discretion of the BOP. After providing a brief explanation of the statutes and regulations at issue, we address each of Royal's arguments in turn.

Subsection (e)(2) of § 3621, which was enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, states:

---

original petition and has therefore preserved the claim for review.

[3]    In addition, Royal's summary section and issue headings contain conclusory claims that the BOP's action in denying him a sentence reduction violated his rights under the Equal Protection Clause. However, this issue is not discussed in the body of his brief, and Royal did not argue it before the magistrate judge; we therefore consider the issue waived and decline to address it. See United States v. Valdiosera-Godinez, 932 F.2d 1093, 1099 (5th Cir. 1991).

[4]    Royal's argument actually discusses only the application of Program Statement 5162.02 to him. However, it was the application of Program Statement 5162.02, as modified by Change Notice CN-01, that resulted in the BOP's determination that he was ineligible for the sentence reduction. As we construe the submissions of pro se litigants broadly in deference to their status, we read Royal's arguments to include an attack on the application of Program Statement 5162.02, as modified by Change Notice CN-01, to him. See Maleng v. Cook, 490 U.S. 488, 493 (1989); Pleasant v. Texas, 134 F.3d 1256, 1258 (5th Cir. 1998).

4

**(A) Generally.**--Any prisoner who, in the judgment of the Director of the [BOP], has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the [BOP] under such conditions as the [BOP] deems appropriate. . . .

**(B) Period of Custody.**--The period a prisoner <u>convicted of a nonviolent offense</u> remains in custody after successfully completing a treatment program may be reduced by the [BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2) (emphasis added).

Effective May 25, 1995, the BOP published regulations governing substance abuse treatment which state that an inmate

who completes a residential drug abuse treatment program . . . during his or her current commitment may be eligible . . . for early release by a period not to exceed 12 months.  The following categories of inmates are not eligible: . . . inmates whose current offense is determined to be a crime of violence as defined in 18 U.S.C. 924(c)(3), inmates who have a prior conviction for homicide, forcible rape, robbery, or aggravated assault, . . . .

28 C.F.R. § 550.58.  On July 24, 1995, the BOP issued Program Statement 5162.02, which classified bank robbery as an offense that, depending on the "specific offense characteristic assigned," might fall within the definition of "crime of violence" and thereby render an inmate ineligible for a sentence reduction under § 3621(e).  FEDERAL BUREAU OF PRISONS, U.S. DEP'T OF JUSTICE, PROGRAM STATEMENT NO. 5162.02, <u>Definition of Term, "Crimes of Violence"</u> § 9 (July 24, 1995) [hereinafter PROGRAM STATEMENT 5162.02].  On April 23, 1996, the BOP altered Program Statement 5162.02 by issuing Change Notice CN-01, which stated that bank robbery should always be considered a "crime of violence."

5

FEDERAL BUREAU OF PRISONS, U.S. DEP'T OF JUSTICE, PROGRAM STATEMENT NO. 5162.02, CHANGE NOTICE NO. CN-01, Definition of Term, "Crimes of Violence" § 11 (Apr. 23, 1996) [hereinafter CHANGE NOTICE CN-01].

## A. Program Statement 5162.02 & Change Notice CN-01

Royal first argues that Program Statement 5162.02, as modified by Change Notice CN-01, is invalid because Change Notice CN-01 was not promulgated in accordance with the APA. Regulations promulgated in accordance with the APA are entitled to a significant amount of deference from a reviewing court. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984).

Less formally produced regulations such as Program Notice 5162.02 and Change Notice CN-01 are internal agency guidelines and are therefore "akin to . . . 'interpretive rule[s]' that 'do[] not require notice and comment.'" Reno v. Koray, 515 U.S. 50, 61 (1995) (quoting Shalala v. Guernsey Mem. Hosp., 514 U.S. 87, 99 (1995)). As such, they are promulgated internally and may be altered at will by the BOP, Jacks v. Crabtree, 114 F.3d 983, 985 n.1 (9th Cir. 1997), cert. denied, 118 S. Ct. 1196 (1998), and they therefore are entitled to less deference than APA regulations. However, the Supreme Court has indicated that Program Statements are "still entitled to some deference" and will be upheld if they constitute a "'permissible construction of the statute'" that they interpret. Reno, 515 U.S. at 61 (quoting Chevron, 467 U.S. at 843). Thus, we must consider whether Program Statement 5162.02, as modified by Change Notice CN-01, is

6

a permissible interpretation of 18 U.S.C. § 924(c)(3), the statute it addresses.

Section 924(c)(3) defines a "crime of violence" in the following manner:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

The United States Code defines the crime of bank robbery as follows:

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; . . .
>
> . . .
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

Program Statement 5162.02, as modified by Change Notice CN-01, states:

> With regard to the specific crime of bank robbery, the offense should be considered a crime of violence pursuant to section 924(c)(3) since, due to the circumstances surrounding bank robberies, the offense involves an explicit or implicit threat of force and

7

> thus has as an element the "threatened use of physical force against the person or property of another."

CHANGE NOTICE CN-01, supra, § 11. Based on our reading of § 924(c)(3) and § 2113(a), we conclude that Program Statement 5162.02, as modified by Change Notice CN-01, constitutes a permissible interpretation of § 924(c)(3).

## B. *Substantive Claims*

Royal next contends that Program Statement 5162.02, as modified by Change Notice CN-01, should not be applied to him retroactively. He relies on the Ninth Circuit's recent decision in Cort v. Crabtree, 113 F.3d 1081 (9th Cir. 1997). In Cort, the petitioners had, like Royal, been convicted of bank robbery and had completed the BOP's drug treatment program. Id. at 1082-83. Prior to the issuance of Change Notice CN-01, the BOP informed the petitioners that they were eligible for sentence reductions pursuant to § 3621(e). Id. After the BOP modified Program Statement 5162.02 through the issuance of Change Notice CN-01, however, it informed the petitioners that they were ineligible for a sentence reduction. Id. at 1083.

The Cort petitioners filed habeas corpus petitions pursuant to 28 U.S.C. § 2241, challenging the retroactive application of Program Statement 5162.02, as modified by Change Notice CN-01, to them after the BOP previously had determined that they were eligible for sentence reductions. Id. The government, while refusing to argue that the BOP exceeded its authority in adopting the initial version of Program Statement 5162.02, contended that

8

bank robbery is necessarily a crime of violence under the law of the Ninth Circuit.  Id. at 1085-86.  The government therefore argued that,

> because the [BOP's] initial interpretation of "nonviolent offenses" as including certain instances of unarmed bank robbery constituted an error of law, the [BOP] may now disregard the eligibility determinations that it rendered pursuant to that interpretation, and may view the subsequent revocation of appellants' eligibility determinations on the basis of its new interpretation as the mere correction of a mistake.

Id.

The court agreed that circuit precedent interpreting the Sentencing Guidelines indicated that bank robbery could not constitute a "nonviolent offense," but it nevertheless held that the BOP's new definition of a "crime of violence" contained in Program Statement 5162.02, as modified by Change Notice CN-01,

> applies only to prisoners who had neither entered the substance abuse treatment program nor received favorable eligibility determinations as of the date of its issuance.  Accordingly, the [BOP] remains bound by its initial determination that appellants are statutorily eligible for sentence reduction under 18 U.S.C. § 3621(e)(2)(B), and it must now decide, within its discretion, whether to grant the reduction.

Id. at 1086-87.

We disagree with the Ninth Circuit's resolution of this issue.  In order for Royal to prevail on a claim that Program Statement 5162.02, as modified by Change Notice CN-01, was erroneously used retroactively to render him ineligible for a sentence reduction, Royal must show that he was legitimately eligible for a sentence reduction prior to the issuance of Change Notice CN-01.  Assuming that Royal presented evidence sufficient

9

to show that the BOP granted him a sentence reduction pursuant to the original version of Program Statement 5162.02, we must consider whether that version's interpretation of § 924(c)(3) is a permissible one.

Prior to Change Notice CN-01's alteration of its terms, Program Statement 5162.02 stated that bank robbery was a crime that "may or may not have involved the use, attempted use, or threat of force, or presented the substantial risk that force might be used against the person or property of another." See PROGRAM STATEMENT 5162.02, supra, § 9. However, by definition, the crime of bank robbery includes as a necessary element the use of "force and violence" or "intimidation." 18 U.S.C. § 2113(a). Royal does not dispute that he pled guilty to and was convicted of bank robbery pursuant to § 2113(a).[5] Under § 924(c)(3), a "crime of violence" is one that "has as an element the use, attempted use, or threatened use of physical force against the

_____

[5] Royal's Presentence Investigation Report includes the following description of his offense conduct:

Royal . . . handed the [bank] teller a note which read, "This is a hold up. Put all big bills in the bag and you will not get hurt." The teller looked at Royal after reading the note and heard him say, "This is not a joke. This is for real." Royal also said, "Don't make any sudden moves," and then motioned for the teller to get the money. Royal then placed a bag on the teller counter, again advising the teller not to make any sudden moves and leaned onto the counter. Royal kept his right hand down near his waistband, leading the teller to believe that he had a weapon. However, no weapon was ever observed. The teller then placed money from her teller drawer into the bag, which Royal took from her, along with the robbery demand note and walked out of Bank One.

10

person or property of another."  18 U.S.C. § 924(c)(3)(A).  Thus,

according to § 924(c)(3)'s definition, which was referenced by

the BOP's own published regulation, 28 C.F.R. § 550.58,[6] Royal is

currently incarcerated for a "crime of violence" and therefore

is, and has always been, ineligible for a sentence reduction

pursuant to § 3621(e).[7]  For the foregoing reasons, we conclude

that Program Statement 5162.02's original statement that an

inmate convicted of bank robbery might be eligible for a sentence

reduction pursuant to the provisions of § 3621(e) conflicted with

---

[6]     Section 3621 (e)(2)(B) states that "the period a
prisoner convicted of a <u>nonviolent offense</u> remains in custody
after successfully completing a treatment program <u>may be reduced
by the [BOP]</u>."  18 U.S.C. § 3621(e)(2)(B) (emphasis added).
Thus, § 3621(e) expressly leaves sentence reductions for inmates
convicted of nonviolent offenses to the discretion of the BOP.
<u>Chevron</u>, 467 U.S. at 843-44 ("If Congress has explicitly left a
gap for the agency to fill, there is an express delegation of
authority to the agency to elucidate a specific provision of the
statute by regulation.  Such legislative regulations are given
controlling weight unless they are arbitrary, capricious, or
manifestly contrary to the statute.").  In accordance with this
delegation, in order to clarify which prisoners' sentences it
would consider reducing, the BOP promulgated 28 C.F.R. § 550.58.
Section 550.58 indicates that inmates "whose current offense is
determined to be a crime of violence as defined in 18 U.S.C.
§ 924(c)(3)" are not eligible for sentence reduction pursuant to
§ 3621(e).  28 C.F.R. § 550.58.  In <u>Wottlin v. Fleming</u>, 136 F.3d
1032, 1036 (5th Cir. 1998), we held that § 550.58 was a
reasonable interpretation of § 3621(e).

[7]     Our interpretation of the statutes and the regulation
at issue is bolstered by the fact that § 550.58 explicitly states
that "inmates who have a prior conviction for homicide, forcible
rape, <u>robbery</u>, or aggravated assault" are not eligible for
sentence reduction under § 3621(e).  28 C.F.R. § 550.58 (emphasis
added).  It defies logic to create a rule that an inmate with a
<u>prior</u> conviction for robbery can never be eligible for sentence
reduction but an inmate serving a <u>current</u> conviction for bank
robbery may be eligible.

11

§ 924(c)(3) and therefore was erroneous as a matter of law.[8]  As any determination by the BOP that Royal was eligible for a sentence reduction was erroneous, his actual status has not been retroactively changed by the application of Program Statement 5162.02, as modified by Change Notice CN-01, to him.[9]

Royal next argues that the BOP's application of Program Statement 5162.02, as modified by Change Notice CN-01, to him violated the Constitution's prohibition against ex post facto laws because it had the effect of increasing his sentence by one year.  We disagree.

The Supreme Court has held that "two critical elements must be present for a criminal or penal law to be ex post facto:  it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."  Weaver v. Graham, 450 U.S. 24, 29 (1981) (footnotes omitted).

> We note that a critical element of an ex post facto violation is an absence of forewarning, that is, that

---

[8]  Our decision in this case makes no comment on the validity of any other portion of Program Statement 5162.02's original version or of its current version (as modified by Change Notice CN-01).  We simply hold that Program Statement 5162.02's original classification of bank robbery convictions under 18 U.S.C. § 2113(a) was incorrect but that its amended classification of the same crime is a permissible interpretation of § 924(c)(3).  Thus, our decision is not in conflict with our previous holding in Venegas.  126 F.3d at 762 n.1, 765 (holding that Program Statement 5162.02's classification of violations of 18 U.S.C. § 922(g) and 21 U.S.C. § 841(a)(1) as violent offenses was not erroneous as a matter of law).

[9]  Royal does not challenge the application of § 550.58 to him, and in any event such a claim is foreclosed by circuit precedent.  See Wottlin, 136 F.3d at 1036.

12

> the change is unexpected.  As the Supreme Court has explained, "critical to relief under the <u>ex post facto</u> Clause is not an individual's right to less punishment, but <u>the lack of fair notice and governmental restraint</u> when the legislature increases punishment beyond that [which] was perceived when the crime was consummated."

<u>Hallmark v. Johnson</u>, 118 F.3d 1073, 1079 (5th Cir.) (quoting <u>Weaver</u>, 450 U.S. at 30), <u>cert. denied sub nom.</u>, 118 S. Ct. 576 (1997).  Thus, a court considering whether a law is ex post facto "is concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place <u>when the act occurred</u>."  <u>Weaver</u>, 450 U.S. at 30 n.13 (emphasis added).

Royal committed the bank robbery for which he was convicted on April 18, 1994.  Subsection (e) of 18 U.S.C. § 3621, which created the program giving the BOP the discretion to reduce the sentences of eligible prisoners who complete a comprehensive drug abuse treatment program, was not enacted until September 13, 1994, nearly five months after Royal committed his offense.  As there was no possibility of a reduction in Royal's sentence on this basis at the time he committed the offense, the fact that he is not eligible for the reduction does not render Program Statement 5162.02, as modified by Change Notice CN-01, "more onerous than the law in effect <u>on the date of the offense</u>," as is required for an ex post facto violation.  <u>Id.</u> at 30-31; <u>see also</u> <u>Wottlin</u>, 136 F.3d at 1038.  Thus, Program Statement 5162.02, as modified by Change Notice CN-01, does not violate the Ex Post Facto Clause.

13

Royal next argues that the BOP's classification of him as ineligible for a sentence reduction under § 3621(e) violated his rights under the Due Process Clause. As we have concluded that Royal was not among the class of inmates (i.e., those not convicted of "crimes of violence") who were eligible for sentence reduction, Royal's due process claim necessarily fails because he never had a legitimate liberty interest in the one-year sentence reduction that he now seeks.

Finally, Royal contends that the BOP's determination that he was not eligible for a sentence reduction amounted to a breach of contract. Assuming arguendo that this amounts to a claim that Royal is being held in custody in violation of the laws or Constitution of the United States as contemplated by 28 U.S.C. § 2241, which is doubtful, this argument lacks merit. As the magistrate judge explained, Royal has offered no documents establishing a contractual relationship between himself and the BOP. Moreover, Royal attached to his habeas corpus petition a document signed by Warden Tombone which states, "A review of the DAPS Program Agreement form[10] reveals that staff did not sign an agreement with you that you would receive a sentence reduction of one year for completion of the program." As Royal has failed to

---

[10] The DAPS Program Agreement form, which is also part of the record in this case, makes no mention of a guarantee of a sentence reduction. Rather, it is focused on informing the participant of the rules and regulations of the drug-treatment program and on obtaining the participant's consent for the disclosure of information about his treatment to other agencies for the purpose of developing a comprehensive drug-treatment plan.

14

demonstrate that any contractual relationship existed, his breach of contract claim fails.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.